or Harrington v. Crouse. MS. MAGNUSON Good morning. May I proceed, Your Honors? Good morning. May it please the Court, my name is Kelly Magnuson. I am the attorney for the appellant, Janice Harrington. This morning, the issue that is dealt with in this case is whether or not plaintiff's pleading should have been dismissed at the motion-to-dismiss stage pre-answer. It is appellant's position that the district court erroneously dismiss this case on a pre-answer motion where the court must draw inferences in favor of plaintiff on the plausible facts, which was one of the key words in the decision in this case, plausible facts. It is appellant's position that Ms. Harrington plausibly alleged facts amounting to a sexual offense under New York penal law. MS. MAGNUSON So there's no disagreement here that it was your client's obligation to plausibly allege conduct that would constitute a sexual offense under New York penal law. MS. HARRINGTON Correct, Your Honor. There's no disagreement there. I believe where there is a divergence and where the district court erred was whether or not the plaintiff plausibly alleged those facts and the standard for plausibly alleging those facts. It is not just the words in the complaint, and this Court has said so on other occasions. In the Anderson case in 2012, the Second Circuit has stated that we look at all of the circumstances to determine whether or not the plausible inference is made in the complaint, and it's based on… MR. GOLDSTEIN So what are the allegations in the complaint that you think permit the inference that Dr. Rue performed the procedure for the purpose of degrading or abusing or for the purpose of gratifying his sexual desire? What are the allegations? MS. HARRINGTON Well, Your Honor, one of the questions you just asked was about gratifying himself for pleasure, and the district court, Judge Hurd only spoke to that specific element of the statute. The district court held that the plaintiff, I'm sorry, Dr. Rue, the defendant, was not gratifying himself. However, as Your Honor just mentioned, those are not the only, that's not the only… MR. GOLDSTEIN Can I just back you up? Are you conceding that you did not allege any facts that would satisfy that prong of the mens rea? MS. HARRINGTON Correct. MR. GOLDSTEIN Okay. So you're only relying on the degrading or abusing purpose? MS. HARRINGTON Yes, Your Honor. MR. GOLDSTEIN Can you just go ahead and answer Judge Park's question and tell us what facts do support it? MS. HARRINGTON Yes. So the facts that support the allegations of abusive, I believe cumulatively with other facts go to degrading. So I'll address the abusive facts since they're compounded in the next section. So as we know from the facts in this case, taking plaintiff's facts as true, she was forced to remain in a position that was uncomfortable against her will. There was no reason for it whatsoever. And facts and the experts will show that if we get to discovery where this case should be. There are also the issues that plaintiff had previously told the defendant she did not want this procedure performed, that plaintiff was told by some of defendant's colleagues that he performs the procedure on everyone regardless of need. And most importantly, if we imagine any other situation, and not giving birth, but a person with a broken leg being made to stand on it. MR. GOLDSTEIN Did you say he does it regardless of need? Where did you say that? MS. HARRINGTON I'm sorry, Your Honor. MR. GOLDSTEIN You said he always does it regardless of need. I see the allegation of the complaint that he always does it, but I didn't see the allegation regardless of need. MS. HARRINGTON Well – MR. GOLDSTEIN No, I'm asking you literally. You just said that you alleged that, did you? And if so, where? MS. HARRINGTON Your Honor, no. I'm sorry. What I said was that he always performs it, and I – MR. GOLDSTEIN You said regardless of need, and I'm asking you because that could be a relevant thing. If a surgeon always does a procedure, that doesn't necessarily suggest they do it always regardless of need. They may always think it's needed, and I'm asking you for that last part. Did you allege it or not? MS. HARRINGTON We did not, Your Honor. MR. GOLDSTEIN So then how can – I don't understand the degrading part. If a surgeon perhaps wrongly, perhaps negligently thinks a procedure is always needed, how does that show or raise the inference of a purpose of abusing or degrading? Or does it show equally perhaps a degree of negligence or malpractice? MS. HARRINGTON Your Honor, I believe – we believe that it does show that it was degrading and abusive, and it's under the totality of the circumstances. In addition, there are facts that will be discovered during paper discovery and depositions that are relevant to his state of mind that we cannot get to in a complaint only. And the standard for whether or not it is – there's a plausible inference is not that it's more likely than not that this was what his mens rea was. It's taking the performed a procedure on her sexual body parts that was not wanted, requested, consented to. It's that the totality of those hours with Dr. Ryu showed his abusiveness and degrading the plaintiff by refusing to permit her to be in a position where she was in pain. There is no reason that that would be done if it was not for an abusive or degrading reason. In addition, he did not tell her what he was doing, when he was doing it. He ordered her to lay down and stay still. This was not an emergency resuscitation. This was not a situation where the doctor was trying to save her life. It is clearly an elective procedure, and the facts of the entire situation show that this was – there was – there were elements of the statute of limitations. And I think it's important for us to understand that Dr. Ryu did not read the plaintiff, which I think also goes to the statements by his colleagues, that said he always does this. And while we cannot say at this stage of a proceeding that he always does it and sometimes it's not necessary, I believe that if we get to the case itself, expert testimony will have to deal with that. Did the statute of limitations run on a malpractice claim? On a malpractice claim, it certainly did. At the time of the filing of the complaint. Absolutely. All right. But had that been filed timely, you could have brought a malpractice claim, right? Could have brought a malpractice claim, but, Your Honor, the claim that we believe is relevant to the criminal statute or most relevant is a battery claim. And that can survive if the Adult Survivors Act statute is implemented here. The plaintiff believes that the plausibility whether or not one set of facts is more believable than the other is to be decided from my client by a trier of fact, the jury to make the decision, and it should not have been dismissed at this stage. Thank you, Your  Good morning. May it please the Court. My name is Catherine Buckley. I represent Crouse Hospital. Briefly, Crouse's arguments about the hospital itself are very straightforward. Basically, Ms. Harrington did not bring any claims against the complaint. She did not claim that Dr. Yu, that the hospital should be vicariously liable for Dr. Yu. All of the claims are about Dr. Yu's care, not any hospital employee. And the plaintiff did not argue that Dr. Yu was an employee or agent of the hospital. But even if the complaint could be read to allege vicarious liability by the hospital for Dr. Yu, to maintain this claim, the plaintiff has to establish that Dr. Yu, she has to have a cognizable claim that Dr. Yu sexually abused this patient. The case law is clear that an employer cannot be held vicariously liable for an employee or agent who is accused of sexual abuse or any intentional tort such as battery. Therefore, this, although the lower court did not reach these arguments, it's Crouse's position that their motion could have, the hospital's motion could have been granted on these grounds. And therefore, the granting of its motion should be upheld. Now, I would defer to my colleague for most of the arguments about Dr. Yu, but I will touch on them briefly. The lower court determined that this was a lack of informed consent claim. I think that's very clear. Ms. Harrington in her papers even cited a number of cases involving unwanted episiotomies, episiotomies where it was claimed that there was no informed consent for them that were treated as lack of informed consent claims under medical malpractice. She also discussed battery. But in New York State, lack of informed consent is not treated as battery. It is treated as medical malpractice claim. As the court already established, her medical malpractice claim was far outside the statute of limitations when this complaint was brought. How far outside the statute of limitations was it? I believe it was brought 16 years after the actual, the care was in 2006. The complaint was filed in 2023. There's no plausible interpretation of the facts here that Dr. Yu acted in any way that could be considered sexual abuse or forcible touching, which are the allegations under the penal code that were alleged by Ms. Harrington. It's not comparable to the cases cited by plaintiffs that have been upheld for such sexual abuse cases. This was, there was a case with unneeded vaginal exams performed on a child, a doctor who watched or assisted while the patient masturbated. This case is not anywhere near similar to those cases. This is a case where a doctor was performing a procedure, and as Ms. Harrington alleged, this was his custom and practice. This is how he performs deliveries. He performs episiotomies. And Ms. Harrington's husband was standing right there according to her own complaint. So if there was any sort of sexual deviancy occurring here, her husband was present, which I think undermines her allegations. Ms. Harrington also cites you a couple of cases where she alleges further investigation, further discovery would be required. Most of these cases involved controlled substances where the court needed to determine whether they were provided for a legitimate medical purpose. Obviously, that would be something that would require more investigation. The only Adult Survivors Act case that she cited was where the plaintiff had alleged sexual touching occurred during clearance for an eye procedure. The facts of the case are not similar to this case. The patient had come in for a clearance visit, and the doctor had her take off all her clothes while he rubbed her and leered at her in compromising positions. This case, the doctor was providing medical care as was his custom and practice as alleged by the plaintiff. I will leave everything else to my colleague for the rest of the arguments for Dr. Yu unless you have any questions for me. Okay, thank you. Good morning, your honors. May it please the court, Gabrielle Bull on behalf of Dr. Yu. To build on my colleague Ms. Buckley's argument, at most this is, and as the district court correctly held, at most this is a medical malpractice case. This was an OBGYN performing an episiotomy during a vaginal childbirth. Plaintiff's attempt to skew this into a deviant act fails because there are no facts that have been alleged, which either, as your honor touched on already, established that this was done for the purpose of sexual gratification or for the purpose to abuse and degrade. And contrary to what appellant's counsel claims, and Judge Hurd did touch on the portion of the element of intent to abuse or degrade specifically on page 11 of the decision, that purpose is addressed. And additionally, what's most telling is that while counsel attempted to cite these alleged statements made by Dr. Yu's residents, specifically what's been alleged is that these residents made the statements about him always cutting episiotomies. Two paragraphs above that, he specifically alleged a direct quote attributed to Dr. Yu, which is that he stated, sometimes they're necessary. That allows for the inference that Dr. Yu performed this episiotomy because he believed it was necessary. That was the intent and purpose. And to the extent that... Well, we don't draw inferences in favor of Dr. Yu at this point. We draw inferences in favor of the plaintiff, right? Correct, your honor, but these are at most the inferences that can be made. There are no other inferences that can be made because there are no facts that allow for this alleged abuse. Well, the inference that could be made is to disregard his suggestion he does them when they're necessary and to instead take an inference that he does them every single time regardless of whether they're necessary. That would be the best inference for the plaintiff. I understand your argument that that still doesn't get you the mens rea out of the statute, but I don't think we would go to the opposite extreme and infer that he actually does them because they're necessary. Because that would be very odd indeed that they're necessary in every case. That's correct. But even to get to that inference, your honor, which would be favorable to the opposing side, that still must combine them into both inferences. But as your honor just stated, regardless, that does not get us to the mens rea element under any of the sections of Article 130 of the penal law that have been alleged. Could you address aggravated sexual abuse specifically? The claim that that conduct constituting that offense, the four varieties, has been plausibly alleged. I missed the first part of your question. I apologize, your honor. Just could you address the aggravated sexual abuse, the claim that that's been plausibly alleged here? Absolutely, your honor. Under those four sections of the penal law, there either has to be an insertion of a foreign object or a finger without permission under the circumstances. Now, the first and most important part of those four sections of the penal law is that they all have a specific caveat that says conduct performed for a medical purpose does not fall under those sections. So by virtue of that alone, those sections don't apply because an episiotomy, even an unnecessary one, is still recognized as having a medical purpose. However, separate and apart, as Judge Heard addressed, there has been no factual allegation that there was an insertion of a foreign object or a finger for an unpermitted purpose. This was a vaginal delivery of a child. Understandably, there was likely some insertion of a finger or hand to deliver the child. However, none of that conduct has been alleged as a basis of any of these allegations. So there is no conduct that falls within that. And as Judge Heard also pointed out, and we would agree with, the performance of an episiotomy runs from the opening of the vaginal canal to the anus. It does not enter any of, pardon my language, but orifices that the statutes require there be an insertion into in order to meet the standards of those, any of those four constitutional law. So that's why they fail as well. And I also address the lack of informed consent in my papers, and I'll rely on those for those parts unless Your Honors have any other questions. Otherwise, rely on my brief. Thank you. May I proceed? Thank you. Your Honors, I think that some of the very important issues that have to be dealt with here are, or that have been discussed here, are issues that needed to be dealt with in the district court, whether it was during a trial or whether it was through a Rule 56 motion after discovery and depositions had occurred in this case. What Ms. Harrington is asking for is for her claims to be heard, asserting that there are plausible facts that could lead a trier effect to believe her claims fall under the statute, to believe the conduct was abusive in the totality of the circumstances. We're not here on a dismissal of a Rule 56 or on a verdict that's being appealed. The statement that the conduct was performed for a medical purpose, not all conduct that is performed in an operating room or in a physician's office is for a medical purpose. Just because an episiotomy could be necessary and could be performed for a medical purpose does not mean that it always is. Those words are not that literal. If a patient has GYN surgery and a doctor removes a patient from the operating room for a medical purpose that the patient was there for, I think the way the appellee wants the court to understand that portion of the statute is that anything a doctor does is for a medical purpose, whether or not it's needed for this client, whether or not the client has already refused to have that done. What I heard from both the hospital and from the doctors counseling council is that there was deviancy. Both used the words deviancy. We have not alleged deviancy. We're not asking the court to define deviancy. We have alleged that the elements of the statute are met and that we do not have to, as Judge Hurd had focused on, allege that this was done for his sexual gratification or sexual gratification. Using the words deviancy or discussing sexual gratification throw out all of the other elements of the statute, which we have alleged facts on. And I think that's why it's been argued that way. The last part is whether or not a scalpel or a scissor entered the vagina. It was only at the vagina's opening. I think that this is an exercise in trying to redefine something in a way that they would like. Something that is entering the opening of the vagina is in the vagina. Thank you, Your Honor. Thank you both. Thank you all. And we will take the matter under advisement.